IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Vanessa Thomas, | ) | |
| | ) | Civil Action No. 9:11-669-SB-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Kmart Corporation; Kmart Holding | ) | |
| Corporation; Sears, Roebuck and | ) | |
| Company, and Sears Holdings | ) | |
| Corporation a/k/a Sears Holding | ) | |
| Corporation, all d/b/a "Kmart," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the defendants' motion for summary judgment. [Doc. 47.] The plaintiff, proceeding *pro se*, has pled various state law claims for abuse of process, malicious prosecution, defamation, invasion of privacy, intentional infliction of emotional distress, and negligence.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff began work for Defendant Kmart Corporation as a Loss Prevention Associate (LPA) on or about May 18, 2006, at its Beaufort location, after she returned home from her first year of college at Claflin University in Orangeburg, South Carolina.

(Compl. ¶ 14; Pl. Dep. at 15.) As an LPA, the plaintiff's primary job included "looking for shoplifters[,]" "investigat[ing]" other employees whom she suspected of theft, and securing the store at the end of the day and locking the doors. (Pl. Dep. at 95, 98).

After a few months of employment, the plaintiff's direct supervisor became Dee Brown Johnson, the Loss Prevention Manager for the Orangeburg store. (Pl. Dep. at 16, 58, 87). Johnson's supervisor was Ralph Anderson, the Loss Prevention District Manager. *Id.* at 34.

On or about September 15, 2007, Johnson was informed by another employee that the plaintiff was opening the secured doors after the store was closed for the day, which is a violation of Kmart policy. (Def. Ex. B.). The defendants represent that Johnson began an internal investigation into the plaintiff's actions during her shifts, and Anderson directed Johnson to begin video surveillance of the plaintiff. On several occasions, Johnson's surveillance allegedly confirmed that the plaintiff violated policy by unlocking the secured doors after hours. The defendants represent that Johnson also witnessed, via video surveillance, suspicious activity from the plaintiff on various occasions and concluded she was stealing merchandise. *Id.*

On October 31, 2007, Johnson and Anderson met with the plaintiff and terminated her employment with Kmart for "misappropriation of company merchandise." (Pl. Dep. at 36). In order to avoid criminal prosecution, Kmart first hired a law firm that specializes in

collecting unpaid debts. After unsuccessfully attempting to have the plaintiff pay for the merchandise, Kmart commenced a criminal proceeding. (Def. Ex. D) At trial the plaintiff was found not guilty.

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the

case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I. Proper Defendants

In addition to Kmart Corporation, the plaintiff contends that Kmart Holding Corporation; Sears Roebuck and Company; and Sears Holdings Corporation were all her employers. The defendants represent that the plaintiff was only employed by Kmart

Corporation and that Sears Holdings is the parent company of that entity, not liable for its actions.

This is a diversity action. Although federal law applies to the procedural rules governing this case, the Court must apply state law to substantive issues when, as here, it sits in diversity. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). No conflict of law issue has been raised. In fact, the defendants appeal specifically to South Carolina law. *See Carroll v. Smith-Henry, Inc.*, 313 S.E.2d 649, 651 (S.C. Ct. App. 1984). Accordingly, the Court will apply the law of that state.

As an initial matter, South Carolina generally recognizes that a corporation is an entity that is separate and distinct from, and its debts are not the individual debts of, its officers and stockholders. *Hunting v. Elders*, 597 S.E.2d 803, 806 (S.C. Ct. App. 2004), (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976)). Although the corporate entity may be disregarded in some situations, "piercing the corporate veil is not a doctrine to be applied without substantial reflection.*"*

Roughly summarized, South Carolina has recognized essentially three theories available to hold a parent corporation liable for the acts of its subsidiary: (1) piercing the corporate veil; (2) alter-ego or instrumentality theory; and (3) the amalgamation of interests or blurred identity theory. *See Mid–South Mgmt. Co. v. Sherwood Dev. Corp.*, 649 S.E.2d 135, 140–44 (S.C. Ct. App. 2007); *Magnolia North Property Owners' Ass'n, Inc. v. Heritage Communities*, 725 S.E.2d 112, 118 (S.C. Ct. App. 2012). The plaintiff,

5

reasonably, has not articulated her response in the language of any particular theory, which is not to her prejudice, but the limited evidence she has submitted satisfies none.

The plaintiff has offered essentially three relevant documents. The first is a merger proposal concerning a putative merger between Kmart Holding Corporation and Sears Roebuck, Corp. (Pl. Ex. A. at 1.) The document indicates that the surviving entity was to be Sears Holdings Corporation. *Id.* The defendants already admit, however, that Kmart Corporation is a wholly owned subsidiary of Sears. In this merger document offered by the plaintiff, the ball is not advanced.

Second, the plaintiff has offered two internal disciplinary or incident report documents both of which bear the company names, Sears Holdings or Sears. (Pl. Exs. B, C.) These documents are, in fact, more interesting. They however, do not contain the type of corporate detail and information necessary, *see id.*, to succeed on any "veil piercing" theory – to wit, capitalization of the parent corporation; adherence to corporate formalities; payment of dividends; trophy officers and directors; want of corporate records, etc. *See Mid-South*, 649 S.E.2d at 140-41. Likewise, these documents do not create issues of fact as to any "almagamation of interest" or "sibling entity" theory. *Id.* at 144. There is no evidence of record as to whether any of the entities sued by the plaintiff shared officers, shareholders, or location, as that theory requires. *Id.* While the use of "Sears" letterhead is relevant, *id.*, it is not on its own account sufficient to submit such a theory to jury. Much more evidence of shared corporate structure would be required. *Id.*

Finally, the Court would reject that the plaintiff could succeed, on the strength of these two documents, under an alter-ego theory either. Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent. *See Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 425 S.E.2d 764, 774 (S.C. Ct. App.1992). "Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation." *Mid–South*, 649 S.E.2d at143–44. Moreover, "[c]ommon officers and/or directors and public identification of one corporation as the other's subsidiary do not, without more, support the conclusion the subsidiary is its parent's alter ego or agent for the transaction of its business." *Yarborough & Co. v. Schoolfield Furniture Indus., Inc.*, 275 S.C. 151, 153–54, 268 S.E.2d 42, 44 (1980).

However, simply establishing the level of control or dominance a parent has over a subsidiary is not sufficient to maintain an alter-ego action. *Mid–South Mgt.*, S.E.2d at 143 (citing *Colleton County Taxpayers v. School Dist. of Colleton County*, 638 S.E.2d 685 (2006); *Baker v. Equitable Leasing Corp.*, 275 S.C. 359, 271 S.E.2d 596 (1980)). Instead "one must [also] show that the retention of separate corporate personalities would promote fraud, wrong or injustice, or would contravene public policy." *Mid–South*, 649 S.E.2d at 143.

The plaintiff has not demonstrated the level of control and dominance contemplated by law. Even as she would suggest that Dee Johnson and Ralph Anderson, in a sense, acted on behalf of Sears in signing the incident report documents bearing Sears' logos, the plaintiff has not submitted any evidence that they were titled and pay-rolled employees of Sears; or that any employee or officer of Sears manipulated or dictated their behavior with respect to the plaintiff or otherwise; or that Kmart shared with Sears some common interest or purpose; or that the existence of the separate entities worked a kind of fraud or injustice on the public.

Therefore, the plaintiff has not created issues of fact under any theory, recognized by South Carolina, by which Kmart Holding Corporation; Sears, Roebuck and Company; or Sears Holdings Corporation could be held liable. They should be dismissed from the case.

## II. Abuse of Process

The defendant also moves for judgment on the plaintiff's abuse of process claim. The plaintiff contends that the unsuccessful criminal action brought against her was an abuse of process insofar as the defendant was not entitled to file criminal charges where it had previously attempted to collect for the shoplifting loss, privately. *See* S.C. Code § 15-75-40(L).

The elements for an abuse of process claim in South Carolina are: (1) an ulterior purpose; and (2) a willful act in the use of process not proper in the regular conduct in the

proceedings. *D.R. Horton, Inc. v. Wescott Land Co., LLC*, 730 S.E.2d 340, 351-52 (S.C. Ct. App. 2012); *Huggins v. Winn Dixie Greenville, Inc.*, 153 S.E.2d 693, 694 (S.C. 1967); *see also Ransome v. Mimms*, 320 F.Supp. 1110, 1114 (D.S.C. 1971).

Our courts have noted that an abuse of process action may lie if a party prosecutes an entire lawsuit for collateral purposes. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 567 S.E.2d 251, 255 (S.C. Ct. App. 2002). Nonetheless, "[a]n allegation of an ulterior purpose or 'bad motive,' standing alone, is insufficient to assert a claim for abuse of process." *Id.* at 74, 567 S.E.2d at 255. An ulterior purpose, to satisfy that element for abuse of process, exists if the process is used to gain an objective not legitimate in the use of the process. *Id.* at 71, 567 S.E.2d at 253. However, even assuming there is some evidence a party has an ulterior motive for bringing an action, that party is entitled to summary judgment in its favor on an abuse of process claim if there is no evidence the party engaged in a "willful act," an element essential to the abuse of process cause of action which is characterized as a " definite act . . . not authorized by the process or aimed at an object not legitimate in the use of the process." *Southern Glass & Plastics Co. v. Duke*, 626 S.E.2d 19, 24 (S.C. Ct. App. 2005).

The plaintiff has not established the first element – that the criminal charges against her were for an ulterior purpose. She has submitted evidence that her direct supervisor, Dee Johnson, constantly harassed and mistreated her. Even if this evidence is credited as having created issues of fact as to *Johnson's* motivation and possible explanations for

9

the plaintiff's *termination*, it says nothing about Kmart's subsequent decision and motivation in filing criminal charges. It is that act, filing of criminal process, that must be ulteriorly motivated. The only representations of record are that the defendant Kmart was attempting to recover the cost of stolen goods. (Pl. Dep. at 162-64.) Johnson's personal vindetta, if any, is not relevant. It seems highly unlikely, and the plaintiff has not offered reason to believe, that Johnson had any power or influence over a subsequent decision by Kmart to press charges.

The Court, therefore, need not reach the issue of whether the defendant's conduct constituted a violation of S.C. Code § 15-75-40, in satisfaction of the second element. That statute concerns collections attempts for shoplifting violations. Subsection (L) of the statute plainly states that if a company avails itself of Section 15-75-40, in order to collect on shoplifting restitution, as Kmart did here, it may not later bring criminal charges. S.C. Code § 15-75-40(L). The plaintiff rightly emphasizes that Kmart did both as evidence of abuse of process. The defendant, however, contends that it would work an absurd result to interpret the statute as prohibiting the filing of criminal charges even after an *unsuccessful* collections attempt, as occurred in this case. The defendant claims that subsection (L) only applies where it would be necessary to avoid a double recovery, in both private collection and criminal restitution.

No judicial decision has considered the issue, as far as the Court can tell. But, the statute is relatively plain on its face, without ambiguity. There is no qualification. It reads:

"A store which utilizes the provisions of this section is prohibited . . . ." *Id.* It does not say "successfully" or "effectively" utilizes. And, there is nothing absurd about the result that a company might be legally forced to forego criminal law recourse after a private collections effort. For instance, the statute may reflect the legislative policy that companies should be forced to make an election and, thereby, a decision about the importance of the loss pursued, whether it is substantial enough to invoke state police powers or simply private effort.

But, the Court need not make any particular decision about it. Regardless, even if Kmart violated Subsection (L), there is no evidence that it did so for an ulterior purpose. The claim should be dismissed.

## III. Malicious Prosecution

The defendant also moves for dismissal of the plaintiff's malicious prosecution case. It is undisputed that the plaintiff was found not guilty of the alleged shoplifting at her criminal trial. The plaintiff claims that she was arrested on the campus of Claflin University in front of faculty and students and that her reputation has been damaged in the community. She was greatly embarrassed. The undersigned empathizes with the plaintiff's frustration in such treatment, especially, after having been successfully vindicated in court.

Nevertheless, this action is not a retrial of the truth of the allegations against her. The plaintiff's burden in malicious prosecution is high. Kmart need not have been "right"

about the plaintiff to have been justified in taking the actions it did. Instead, the elements of malicious prosecution are (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *McBride v. School Dist. of Greenville County*, 698 S.E.2d 845, 855 (S.C. Ct. App. 2010). As a starting point, again, the plaintiff may not rely on whatever private animus Johnson had against her to establish legal "malice" in the prosecution of the case. The plaintiff has not associated Johnson with any decision of Kmart to bring criminal charges. Even if Kmart was wrong to have believed Johnson, this is not evidence of any sort of "malice" as the cause requires. Malice is "the deliberate intentional doing of a wrongful act without just cause or excuse." *Eaves v. Broad River Elec. Coop., Inc.*, 277 S.C. 475, 479, 289 S.E.2d 414, 416 (1982). The plaintiff has not offered evidence that Kmart *knew* Johnson was lying but acted anyway.

Second, the defendant had probable cause. Under South Carolina law,

> [p]robable cause means "the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered." In determining the existence of probable cause, the facts must be "regarded from the point of view of the party prosecuting; the question is not what the actual facts were, but what he honestly believed them to be." South Carolina has long embraced the rule that a true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution. Although the question of whether probable cause

12

> exists is ordinarily a jury question, it may be decided as a
> matter of law when the evidence yields but one conclusion.

*McBride*, 698 S.E.2d at 855 (quoting *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 651 (2006)). Kmart contends that it had probable cause to institute a criminal action because it conducted a thorough investigation and had an honestly held, good faith belief that the plaintiff had shoplifted company property. *See Law*, 629 S.E.2d at 649 (interviewing inmates regarding allegations of drug trafficking by prison guards and searching the guards' bank records supported a finding that the Department of Corrections had probable cause to pursue criminal charges). Specifically, and in addition to other incidents and testimony, the defendant contends that it had Closed Circuit Television video that corroborated the eyewitness account of Johnson that the plaintiff had hidden clothes under a clothing rack and then snuck them out of the store after the close of business. (Def. Ex. B; Def. Mem. Supp. Summ. J. at 15.)

The only problem is that the defendant relies exclusively on the Arrest Warrant and Affidavit, which of course, is the issuing officer's determination that probable cause was present. (Def. Ex. B.) But, the Affidavit does not actually mention the surveillance footage but instead relies on the account of Johnson, whom the plaintiff contends was biased. Moreover, the defendant has not actually submitted any testimony or affidavit of Johnson.

The matter is a close call, in some respects. The Court would note that the estimated loss on this particular date, September 23, 2007, was $84. *Id.* The total amount the collections firm attempted to recover was $334. (Pl. Ex. F.) Between the collections

13

attempt and the criminal trial, the defendant spent a lot energy and likely expense to recover such a nominal sum. That, of course, does not mean that it was improperly motivated. These concerns, however, are of essentially no moment though.

Because, the plaintiff ultimately cannot establish malice, the Court would recommend dismissal of her claim.

IV. **Defamation**

The defendant contends that the plaintiff's defamation claim should be dismissed because all such alleged and actionable defamatory statements of Johnson were made, if at all, outside of the applicable two year statute of limitations period. *See* S.C. Code § 15-3-550. The plaintiff does not disagree that all of Johnson's initial accusations were made over two years ago. They are time barred, therefore. But, she contends that when Johnson repeated those allegations as a part of her in-court testimony, within the two-year window, she defamed the plaintiff again. South Carolina, however, recognizes the common law absolute privilege that protects utterances arising out of a judicial proceeding, by witnesses, and having any relation to it from being sued upon as defamatory. *See Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 567 S.E.2d 881, 893 (S.C. Ct. App. 2002).

Earlier statements of Johnson, therefore, are barred by the applicable statute of limitations and her court testimony is absolutely privileged.[1] The defamation claim should be dismissed.

## V. Workers' Compensation Act Exclusivity

Lastly, the defendant contends that the plaintiff's claims for invasion of privacy, intentional infliction of emotional distress, and negligence/recklessness are barred by the exclusivity provision of the South Carolina Workers' Compensation Act (the "Act"). S.C. Code. Ann. § 42-1-540. That statute states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

*Id.* Additionally, "Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code § 42-1-310. The South Carolina General Assembly has, therefore, vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over an

---

[1] It should also be noted that Johnson is not a defendant in this case. And, there is no evidence as to her relationship to any of the defendants at the time of trial. Accordingly, the plaintiff has not established that defamatory statements made in Johnson's testimony, if any, could be properly attributable to the defendant Kmart Corporation.

15

employee's work-related injuries.  *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002).

South Carolina courts have specifically recognized that causes of action for invasion of privacy, intentional infliction of emotional distress, and negligence/recklessness are covered by the Act.  *See, e.g., Sabb v. South Carolina State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002) (finding negligence claims are covered by the Act); *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993) (recognizing that invasion of privacy claims alleging emotional harm are of a personal nature and are encompassed by the Act; claim of negligence is covered by the Act); *Loges v. Mack Trucks*, 417 S.E.2d 538, 540 (S.C. 1992) (an employee's action for intentional infliction of emotional distress is within the scope of the Act).  Accordingly, the Act is the plaintiff's exclusive remedy and the South Carolina Workers' Compensation Commission has exclusive original jurisdiction over such work-related injuries.  *See Sabb*, 567 S.E.2d at 234.

The plaintiff only responds to summarily say that the claims are not covered by the Act.  The claims should be dismissed.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment [Doc. 47] should be GRANTED and the entire case dismissed against all defendants.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

November 14, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).